IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JERRY E. MOORE, II,** | Case No. 2:10-cv-00453 |
| Plaintiff, | |
| | JUDGE ALGENON L. MARBLEY |
| v. | |
| | MAGISTRATE JUDGE ABEL |
| **DWAYNE D. PIELECH, et al.,** | |
| Defendants. | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant Village of Bridgeport's Motion of Judgement on the Pleadings pursuant to FRCP 12(c). (Dkt. 14.) For the reasons stated below, Defendants Motion for Judgment on the Pleadings is **DENIED** in part and **GRANTED** in part.

**II. BACKGROUND**

**A. Factual Background**

Plaintiff Jerry Moore II is African-American, and a resident of Belmont County, Ohio. He has been employed by Defendant Belmont County in the Department of Job and Family Services since 2001. Defendant Village of Bridgeport, Ohio is a duly constituted village, organized and recognized pursuant to the laws of the State of Ohio.

On November 16, 2005, a man in a mask robbed an Inst–Cash business in the Village of Bridgeport. The police dispatcher issued an alert, which notified Bridgeport's police officers that the perpetrator of the offense was a black male, approximately 5'10" and weighing

1

approximately 160 pounds.  Bridgeport's officers located and detained Moore, who weighs 280-300 pounds, 100 pounds greater than the suspect.

Officers brought the robbery victim to the scene, showed her Moore, and asked if he was the perpetrator of the robbery.  The victim indicated that Moore had been in the Inst–Cash store earlier in the day and was the only black male she had seen that day.  She concluded that he was the robber, and the arresting officer announced: "We have our man."

When news of the robbery became public, an employee that worked in a store near Inst–Cash contacted the Inst–Cash manager and informed the manager that he had seen the perpetrator.  The manager relayed this information to the police.  The police learned from the employee that the suspect was a black man, but took no other action to identify the suspect or investigate the sighting.

Moore was tried three times for the Inst–Cash robbery.  The first two trials resulted in mistrials.  The third resulted in his acquittal.  Moore contends that Bridgeport arrested him and refused to consider any other suspects solely because of his race.  He contends that the Village failed to follow up on other leads or acknowledge that a person other than Moore could be responsible for the offense.  Further, he argues that this action is part of a policy or custom of racial discrimination, malicious prosecution, and intentional disregard for the rights of citizens adopted and condoned by the Village of Bridgeport.

### B. Procedural Background

Moore filed suit against the Village of Bridgeport and others, alleging violations of his constitutional rights in relation to his arrest and employment.  The Village of Bridgeport filed this Motion for Judgment on the Pleadings, alleging that Plaintiff has failed to plead sufficiently

a claim for liability against the Village of Bridgeport as to claims one, three, and five.

Claims One and Three allege various § 1981 and § 1983 violations. Claim One alleges that racial discrimination motivated the Village of Bridgeport and its officers' investigation and prosecution of the Inst–Cash robbery, and amounted to abuse of process and malicious prosecution in violation of § 1983. Claim Three alleges that the Village of Bridgeport is responsible for the policies, statements, ordinances, regulations, customs, and/or usages pursued by its police officers. Further, the Village of Bridgeport has promulgated and/or adopted customs, usages, statements, ordinances, regulations, and/or policies whereby race discrimination, malicious prosecution, and intentional disregard for the rights of citizens have not only become the norm, but are condoned, uncontrolled, and unpunished. Moore contends that, as a result of these policies, he has been deprived of the rights, privileges and immunities secured to him by the Constitution and laws of the United States in violation of § 1983. Claim Five alleges that the acts and conduct of the Village of Bridgeport constitute the state law torts of abuse of process and malicious prosecution.

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings may be made "[a]fter the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings under Rule 12(c) attacks the sufficiency of the pleadings and is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Consequently,

the Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *Murphy v. Sofamor Danek Gp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Although liberal, the Rule 12(b)(6) standard requires more than the bare assertion of legal conclusions to survive a motion to dismiss. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). The complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)). While a complaint need not contain "detailed factual allegations," its "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 127 S. Ct. at 1964. A complaint that suggests "the mere possibility of misconduct" is insufficient; rather, the complaint must state "a plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S at 556). A Rule 12(c) motion is granted only if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd.*, 395 F. Supp. 2d 644, 649 (S.D. Ohio 2004).

## IV. ANALYSIS

### A. Municipal Liability (Claims One and Three)

In his first and third claims, Moore alleges that the Village of Bridgeport has promulgated policies of intentional race discrimination and malicious prosecution, which led to violations of his rights under the Constitution and laws of the United States and under 42 U.S.C. § 1983.

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may be held liable under Section 1983 for the unconstitutional acts of its employees if either a municipality's official policy or one of its customs is the source of the injury. *Id.* at 694. In order to demonstrate liability, a plaintiff must show that the official policy in question is the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citing *Monell*, 436 U.S. at 694). Therefore, unless an official policy-maker is involved in the underlying constitutional violation, the existence of an official policy or custom cannot be demonstrated by the occurrence of the alleged constitutional violation itself. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The Sixth Circuit has held that in order "to satisfy the *Monell* requirements, a plaintiff must identify the policy [or custom], connect the policy to the [government entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir.1993); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997) (noting that a plaintiff must show that municipal action was taken with requisite degree of culpability and must demonstrate a direct causal link between the municipal action and a deprivation of federal rights). A municipal policy includes a "policy

statement, ordinance, regulation, or decision adopted and promulgated." *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690). "An actionable 'custom,' in contrast, 'has not received formal approval through . . . official decisionmaking channels.' A § 1983 plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue." *Id.* (quoting *Monell*, 436 U.S. at 690-91).

In order to survive a motion to dismiss, a plaintiff must set forth facts that establish the existence of the offending policy or custom for which the municipality is responsible. Alleging a single decision by municipal policymakers, such as a legislative act or a decision by an official with final authority, can be sufficient for municipal liability to attach. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-84 (1986) (finding that "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question"); *Cady v. Arenac County*, 574 F.3d 334, 345 (6th Cir. 2009) (same). By contrast, alleging one specific incident by municipal employees resulting in a deprivation of rights is generally insufficient. In order for municipal liability to attach in situations involving a single such incident, the plaintiff must show that the act was taken in connection to a specific pattern or series of incidents; a result of deliberate indifference or gross negligence on the part of the officials in charge; or conduct explicitly or implicitly authorized by a decisionmaker. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *King v. City of Eastpointe*, 86 Fed.Appx. 790, 801 (6th Cir. 2003) (noting that "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or

knowingly acquiesced in the unconstitutional conduct of the offending subordinate") (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

In this case, Plaintiff claims that his alleged constitutional violations were caused by customs, policies, statements, ordinances, regulations, and usages of the Village of Bridgeport. In particular, he states that the Village has allowed policies of "race discrimination, malicious prosecution, and intentional disregard for the rights of citizens" to become the norm. It has participated in alleged illegal acts as a consequence of this policy, gained knowledge of the acts of others, and failed to stop such conduct from occurring. As "a direct and proximate result" of this conduct Moore suffered the alleged constitutional violations, notably malicious prosecution and abuse of process based on his race in violation of § 1983. Making reasonable inferences in favor of the non-moving party, this Court can infer that Moore intends to show that his injuries resulted from conduct undertaken pursuant to official customs of race discrimination and malicious prosecution, and that the customs are "consistently implemented to result in constitutional violations with explicit or implicit ratification by [Bridgeport's] policy makers." *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006), *cert. denied,* 549 U.S. 1114 (2007). Moore has identified a policy, connected the policy to the Village of Bridgeport, and pled facts to show that his injury resulted from that policy. Accordingly, he has pled a cause of action, and the Village's motion for judgment on the pleadings is **DENIED** as to claims one and three.

### B. State Law Claims (Claim Five)

In his fifth claim, Moore asserts state law tort claims of abuse of process and malicious prosecution against the Village of Bridgeport. The Village argues that it is immune. In

7

determining whether the Defendant is entitled to immunity, this Court must examine Ohio state law to ascertain the nature of the immunity, if any. *Powell v. Morris*, 184 F.R.D. 591, 597 (S.D.Ohio 1998) ("When faced with a claim of immunity to a pendent state claim, federal courts look to the appropriate state law to ascertain the nature of the immunity given."). Thus, if a state statute exists under which a Defendant may have immunity from state law claims, the federal court is divested of jurisdiction until the Ohio Court of Claims has determined whether immunity is applicable. *See, e.g., Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir.1989).

The Village relies on the Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.02, to argue that it is immune from suit under state law. For political subdivisions, such as the Village of Bridgeport, the Act requires a three-tiered analysis.[1] *Kranz v. City of Toledo Police Dept.*, 197 Fed.Appx. 446, 449 (6th Cir. 2006) (citing *Cater v. City of Cleveland*, 697 N.E.2d 610, 614 (Ohio 1998). Under the first tier, a political subdivision is "not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Ohio Rev. Code § 2744.02(A)(1). Under the second tier, that immunity is subject to five statutory exceptions as set forth in Ohio Rev. Code § 2744.02(b)(1)-(5). Finally, under the third tier, if an exception to immunity applies, immunity can be restored if the political subdivision establishes any of the defenses in Ohio Rev. Code §2744.03.

---

[1] The Village of Bridgeport is a political subdivision according to Ohio Rev. Code § 2744.01(F), which defines a "political subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."

The Village of Bridgeport asserts that if one of the immunity exceptions in the second tier applies, it is the second, which imposes liability on a political subdivision as a result of "the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." Ohio Rev. Code §2744.02(b)(2). The Village correctly argues, however, that this exception does not apply because the allegations in the case involve police services, which are expressly excluded from "proprietary functions." Under Ohio law, the provision or non-provision of police services and enforcement or nonperformance of laws, which are the basis of the claims in this case, are "governmental" functions. Ohio Rev. Code. § 2744.01(c)(2). *See e.g., Hubbard v. Canton City School Bd. of Educ*, 780 N.E.2d 543, 546 (Ohio 2002). Accordingly, the second exception does not apply.

Moore asserts that the Village of Bridgeport is not entitled to immunity because his tort claims are intertwined with and based on race discrimination in violation of the U.S. Constitution and federal law. In supporting this argument, he relies on Ohio Rev. Code § 2744.09, which provides that the Political Subdivision Tort Liability Act, "does not apply to, and shall not be construed to apply to . . . civil claims based upon alleged violations of the Constitution or statutes of the United States." Ohio Rev. Code § 2744.09(E).

Moore's argument is based on a flawed interpretation of the statute at issue. Ohio courts have held that the Political Subdivision Tort Liability Act does not apply to claims for relief in which the "essential nature" of the claim is a federal constitutional or statutory violation. For example, the Act does not apply to claims raised under Section 1983, *see Patton v. Wood Cty. Humane Soc.*, 798 N.E.2d 676, 681 (Ohio Ct. App. 2003), or the federal Fair Labor Standards Act of 1938, *Dick v. Merillat*, 745 N.E.2d 507, 510 (Ohio Ct. App. 2000). The Act does apply,

9

however, when the "essential nature" of the claim is a state tort claim, even if that claim raises federal constitutional or statutory issues. *Campbell v. City of Youngstown*, No. 06 MA 184, 2007 WL 4696963 (Ohio Ct. App. 2007). For example, in *Campbell v. City of Youngstown* the plaintiff filed suit against the city for wrongful demolition, basing the claim on an alleged due process violation. The court found that even though the claim raised federal issues, immunity applied because the claim arose under state tort law, not under federal law. *Id.* at *3; *see also Bram v. Cleveland*, 647 N.E.2d 523 (Ohio Ct. App. 1993). In this case, Moore's malicious prosecution and abuse of process claims in claim five arise out of state, not federal, law. Accordingly, immunity applies and the Village of Bridgeport's motion for judgment on the pleadings is **GRANTED** as to claim five.

## V. CONCLUSION

For the foregoing reasons, Defendant Village of Bridgeport's Motion for Judgement on the Pleadings (Dkt. 14) is **DENIED** in part and **GRANTED** in part. Defendant's motion for judgment on claims one and three is **DENIED**. Defendant's motion for judgment on claim five is **GRANTED**.

**IT IS SO ORDERED.**

                                         s/Algenon L. Marbley
                                         **ALGENON L. MARBLEY**
                                         **UNITED STATES DISTRICT COURT**

**Dated: April 5, 2011**