**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jerry E. Moore, II, | : | Case No.  2:10-cv-00453 |
| | : | |
| Plaintiff, | : | JUDGE ALGENON L. MARBLEY |
| | : | |
| v. | : | Magistrate Judge Mark R. Abel |
| | : | |
| Dwayne D. Pielech, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on separate motions for summary judgment filed by

Defendants Village of Bridgeport (or "Bridgeport"), (Dkt. 53); Dwayne Pielech and Belmont

County (collectively, "the County"), (Dkt. 54); and Defendants Ohio Council 8 and Local 3073

of the American Federation of State, County and Municipal Employees, AFL-CIO (jointly,

"AFSCME"), (Dkt. 55).  The parties have agreed to waive oral argument on these motions.  For

the reasons set forth herein, the Court summary judgment in in favor of the Defendants is

**GRANTED** on all of  Moore's remaining claims.

### II. BACKGROUND

#### A.  Factual Background

 Moore is a black male and a life-long resident of Belmont County, Ohio.  Defendant

Belmont County has employed  Moore in its Department of Job and Family Services since 2001.

Defendant Village of Bridgeport, Ohio is a duly constituted village, organized and recognized

pursuant to the laws of the State of Ohio.  During Moore's employment with Belmont County he

was a member of the bargaining unit of employees represented by AFSCME.

On November 16, 2005, a man in a mask robbed an Insta-Cash business in Bridgeport. The police dispatcher issued an alert, which notified Bridgeport's police officers that the perpetrator of the offense was a black male, approximately 5'10" tall, and weighing approximately 160 pounds. Bridgeport's officers located and detained Moore, who is six feet tall and weighs 280-300 pounds. Officers brought the robbery victim, a female clerk from Insta-Cash, to Moore's location and asked her if she recognized him as the perpetrator of the robbery. The victim indicated that Moore had been in the store earlier in the day and was the only black male that she had seen all day. She concluded that Moore was the robber. The arresting officer announced, "We have our man," and arrested Moore.

When news of the robbery became public, an employee that worked in a store near Insta-Cash contacted the Insta-Cash manager and informed the manager that he had seen the perpetrator. The manager relayed this information to the police. The police learned from the employee that the suspect was a black man, but took no action to identify the suspect or investigate the sighting. Moore was charged with aggravated robbery with a firearm and was tried three times for the offense. The first two trials produced hung juries and resulted in mistrials. The third trial resulted in his acquittal. Moore contends that Bridgeport arrested him, and refused to follow up on other leads or acknowledge that a person other than Moore could be responsible for the offense, because of his race.

In the period between Moore's arrest and ultimate acquittal, Moore experienced a series of adverse employment actions by Defendant Belmont County: he was suspended with pay, terminated, reinstated in a different position, demoted, placed on probation, and placed on extended probationary periods. Moore sent a letter to Defendant Pielech on October 26, 2009, requesting roughly $90,000 in back pay and related lost benefits for the time he was on

administrative leave.  (Moore Depo. 174:5-8.)  Pielech responded in a November 9, 2009 letter,

stating that the County did not intend to reimburse  Moore's back pay, because he was

terminated for just cause, and therefore the County was not required to repay him.  (Moore Depo.

Exh. 21.)

Moore filed grievances with AFSCME related to his suspension and termination.

Moore alleges that AFSCME failed to pursue or process his grievances despite the fact it pursued

and processed the similar grievances of white employees.   Moore further claims that AFSCME

acquiesced to his extended probationary period without his approval, again in contrast to

AFSCME's treatment of similarly-situated white employees.   Moore also alleges that AFSCME

failed to provide him with sufficient information concerning the status of his grievances and that

AFSCME failed to fulfill its duty to represent him fairly.

Moore also complains of additional harassment and disparate treatment carried out by

police officers and other agents of Bridgeport, directed both at him and other individuals on the

basis of race.   Moore claims Bridgeport Officers Ray and Hendershott used their positions as

police officers to harass and intimidate  Moore from 2006 through 2009 while his robbery case

was pending by driving slowly around his house on a daily basis, following him in their cruisers

with lights flashing while he was walking his dog, and entering  Moore's property while chanting

"We Got You Now You Are Going Down Now."  (Moore Aff. ¶ 20.)  These actions, claims

Moore, illustrate Defendants' broader policy of discrimination against black persons.

### B.  Procedural History

Moore filed suit against Defendants on May 21, 2010, alleging violations of 42 U.S.C.

§§ 1983 ("Section 1983") and 1981 ("Section 1981"); failure to pursue grievances in violation of

AFSCME's duty of fair representation ("DFR"); violations of Ohio Rev. Code §§ 4112.02, *et*

*seq.*; and common law tort claims for abuse of process and malicious prosecution.   Moore amended his Complaint on September 1, 2010.  Bridgeport filed a motion for judgment on the pleadings with respect to all claims against it.  The Court's April 5, 2011, Order on Bridgeport's motion granted Bridgeport immunity, under Ohio Rev. Code § 2744.02, from  Moore's state law claims for abuse of process and malicious prosecution, but denied its motion as it pertained to Moore's federal claims.  (Dkt. 41.)

AFSCME, in turn, moved to dismiss all  Moore's claims against it for lack of subject matter jurisdiction.  In its August 30, 2011, Order, the Court granted AFSCME's motion, in part, dismissing  Moore's DFR claims for failure to first exhaust his remedies in the State Employment Relations Board's ("SERB") review process, and his Section 1983 claim against AFSCME for failing to identify a federal right AFSCME had violated which was distinct from his Section 1981 claim for race discrimination.  (Dkt. 47.)

Bridgeport now moves for summary judgment on the remaining federal claims that survived the Court's judgment on the pleadings; Dwayne Pielech and Belmont County move for summary judgment on all claims against them;[1] and AFSCME moves for summary judgment on Moore's surviving state law claim under Ohio Rev. Code § 4112.02 for unlawful racially discriminatory practices, and his Section 1981 claim.  The Defendants' motions have been fully briefed, and are ripe for adjudication.

### III. STANDARD OF REVIEW

A motion for summary judgment should be granted where "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment will not lie, however, "if the . . . evidence is such that a reasonable

---

[1]  Pielech is the only identified individual Defendant in Moore's Complaint, and is sued both in his individual capacity and in his official capacity as Director of Belmont County Department of Job and Family Services.

jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Jones v. Potter*, 488 F.3d 397, 402-03 (6th Cir. 2007). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).

While all reasonable inferences must be drawn in favor of the non-moving party, "that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment." *Matheney v. City of Cookeville*, No. 10-5546, 2012 FED App. 0150N, at *6 (6th Cir. Feb. 7, 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). In other words, "the non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008); *see also Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (in opposing the defendant's motion, the plaintiffs must "show sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy").

## IV. LAW AND ANALYSIS

### A. Moore's Federal Claims against Bridgeport for Racial Discrimination

As stated in the Court's April 5, 2011 Order, "Claims One and Three allege various § 1981 and § 1983 violations." (Dkt. 41, at 3.) Moore alleges that racial discrimination motivated Bridgeport's investigation and prosecution of the Insta-Cash robbery, and amounted to abuse of process and malicious prosecution in violation of his federal civil rights. Moreover, Moore

alleges that Bridgeport has promulgated policies of intentional race discrimination and malicious prosecution, and as a result of these policies, he has been deprived of the rights, privileges, and immunities guaranteed to him by the Constitution and laws of the United States.

### 1. Section 1981 Claims

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. Bridgeport first argues that Moore cannot pursue a valid claim against it under Section 1981 because Section 1981 does not provide an independent cause of action enforceable against state actors. Bridgeport insists, therefore, that Moore is limited to vindicating his rights under Section 1983, at least with respect to Bridgeport's alleged violations.

The Sixth Circuit, in *Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008), interpreted the Supreme Court's holding in *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701 (1989) as declining to extend Section 1981's implicit cause of action to suits "brought against state actors," such as Bridgeport and its agents. Perhaps in recognition of this precedent, in his opposition to Bridgeport's instant motion, Moore does not contest his claims under Section 1981. Rather, he tailors his arguments for Bridgeport's liability to Section 1983's standards for recovery. For these reasons, to the extent Moore continues to pursue a Section 1981 claim against Bridgeport, that claim is **DENIED**.

## 2. Section 1983 Claims

Moore claims Bridgeport is liable under Section 1983 for the actions of its officers and agents in the malicious prosecution of him for the robbery of which he was acquitted, and their failure to dutifully investigate other potential suspects. Moore claims that Bridgeport maintains, promulgates, and condones policies of race discrimination by its officers regarding the investigation of criminal activity, which resulted in his being subjected to an abuse of process and malicious prosecution.[2] Bridgeport argues that the record contains no evidence of an official pattern or practice of malicious prosecution or race discrimination in its municipality. Bridgeport also claims, alternatively, that Moore's claims are time barred under the applicable statute of limitations.

Under Section 1983, an individual may bring a private right of action against any actor "who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statutes." 42 U.S.C. § 1983; *Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Marmelshtein v. City of Southfield*, 421 F. App'x 596, 599 (6th Cir. 2011). The Supreme Court, in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), established liability for municipalities under Section 1983 "when execution of a [local] government's policy or custom . . . inflicts the injury." *Arendale*, 519 F.3d at 599 (quoting *Monell*, 436 U.S. at 694). Municipal defendants, however, "may only be sued under § 1983 for their own unconstitutional or illegal policies and may not be held vicariously liable for the unconstitutional acts of their employees." *Monell*, 436 U.S. at 691. Thus, even if the individual Bridgeport police officers made decisions with respect to the Moore for discriminatory reasons, Bridgeport is only liable if

---

[2] Additionally, Moore claims the prior incidents involving him—the officers' taunting of Moore during the pendency of the robbery charges; the blatant unwillingness of Bridgeport officers to investigate other potential suspects; and the alleged manipulation of the description of the robbery suspect—provide the reasonable inference of discriminatory intent and malicious prosecution, and require a finding that Bridgeport is aware of, condones, or approves such activity by its officers.

Moore can demonstrate "an official policy or custom that is either 'facially unconstitutional as written or articulated' or has been implemented in such a manner as to demonstrate 'deliberate indifference' to the 'plainly obvious' risk of constitutional violation." *Teets v. Cuyahoga County*, No. 10-3713, 2012 FED App. 0139N, at *14 (6th Cir. Feb. 6, 2012) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006), *cert. denied*, 549 U.S. 1114 (2007)).

Before reaching the question of whether Bridgeport can be held liable under *Monell*, Moore must first demonstrate that a constitutional violation has occurred. *Fox v. DeSoto*, 489 F.3d 227, 238 (6th Cir. 2007) ("Even before reaching the issue of whether the municipality was deliberately indifferent, however, the Plaintiff must demonstrate a constitutional violation at the hands of an agent or employee of the municipality."). Municipal liability "must rest on a direct causal connection between the policies or customs of the [local government entity] and the constitutional injury to the plaintiff." *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005).

The Sixth Circuit has recognized "'a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). As a threshold matter, however, a malicious prosecution claim under Section 1983 "fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Fox*, 489 F.3d at 237; *see also Sykes*, 449 F.3d at 308.

Bridgeport asserts that Moore's indictment by a grand jury for the robbery charge, which he does not dispute, conclusively establishes that probable cause existed to prosecute him, and thus serves as a complete defense for Bridgeport to the malicious prosecution claim. Bridgeport is correct that "[u]nder federal law, the issuance of an indictment by a grand jury conclusively

determines the existence of probable cause." *Davis v. McKinney*, 422 F. App'x 442, 443, *cert. denied*, *Davis v. McKinney*, 2011 U.S. LEXIS 5275 (citing *Barnes*, 449 F.3d at 716). The Sixth Circuit has noted, however, that "an exception to this rule exists where a plaintiff is able to show that defendant police officers knowingly presented false testimony to the grand jury," *McKinney*, 422 F. App'x at 443 (citing *Cook v. McPherson,* 273 F. App'x 421, 424 (6th Cir. 2008)).

Moore argues that the allegedly "contrived 'identification'" Bridgeport's officers conducted amounts to a presentation of false testimony to the grand jury, but provides no further explanation, nor legal support, of this claim. Moore merely cites search and seizure cases which stand for the basic proposition that probable cause must be supported by more than mere assertions made by unreliable informants, which does not bear on the specific issue of an exception to the probable cause inference from an indictment.[3] Moore asserts that there is no evidence that truthful testimony was presented to the grand jury. Certainly, the Bridgeport officers did not perform to the best of their abilities in identifying Moore as the robbery suspect. Nevertheless, it is Moore's burden to produce some affirmative evidence to generate more than mere conjecture that false testimony was presented to the grand jury, *see Lewis*, 355 F.3d at 533, which he has not done.

Moore cannot establish Bridgeport's liability under Section 1983 for malicious prosecution because, though he believes his robbery charges were racially discriminatory, they were later supported by a grand jury indictment, which confirms that Bridgeport's law

---

[3] Specifically, Moore relies on *Illinois v. Gates*, 462 U.S. 213, 239 (1987) (holding that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others," but not involving probable cause in the context of malicious prosecution claims), and *United States v. Leon*, 468 U.S. 897, 914 (1984) (stating "deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based," again not discussing the context of a grand jury indictment).

enforcement officials had probable cause to charge and prosecute him for the crime.[4]  Moore's insistence that "a jury could easily determine that the defendant Village did not respond reasonably in light of the known circumstances and/or exhibited willful and reckless conduct in its indifference for the welfare of its black citizens by allowing a person to be arrested, charged and prosecuted on the sole basis of his race," (Dkt. 59, p. 13), is refuted by the grand jury finding the charges sufficiently reasonable to indict Moore, even though he was ultimately acquitted. Moore simply has failed to disclose sufficient evidence to rebut the presumption of probable cause established by the grand jury indictment.

Moore's other allegations of discriminatory investigative practices provided in support of his claim that Bridgeport maintained an unconstitutional policy of discrimination "from at least 2004 through 2009" cannot support a claim under Section 1983, because  Moore is unable to connect these incidents to any constitutional harm he personally has suffered at the hands of Bridgeport's officers.  *See Gray*, 399 F.3d at 617, *supra*.  Finally, though Moore mentions a separate abuse of process claim, (Dkt. 59, p. 2), he provides no precedent to the Court for the existence of a cognizable federal cause of action under Section 1983 for abuse of process as distinct from his malicious prosecution claim.  To the extent Moore brings a federal abuse of process claim against Bridgeport, therefore, that claim is dismissed for the same reasons.  The suspect quality of the investigation by Bridgeport's police does the city no credit, but nor does it indicate Bridgeport has policy of racial discrimination.

---

[4]  Moore does not deny that following the robbery, the suspect was reported to be a black male driving a silver Chevrolet Impala, a description which Moore matched, though Moore was considerably more heavier than the reported suspect.

Summary judgment in Bridgeport's favor is appropriate on all Moore's remaining Section 1983 claims against it. It is, accordingly, unnecessary for the Court to address Bridgeport's statute of limitations affirmative defense.[5]

### B. Moore's Claims against Dwayne Pielech and Belmont County

Moore claims the County discriminated against him on account of his race both by taking adverse employment actions against him and treating him in a disparate manner from other white employees in similar circumstances. Specifically, Moore complains: his pre-termination hearing was a "sham" in which the County unlawfully forced him to choose between relinquishing his Fifth Amendment right to remain silent about the robbery accusations, or face termination, (Moore Aff., ¶¶ 37-38); he was wrongfully terminated for "insubordination" after his first disciplinary offense (*Id.* ¶ 39); the County wrongfully contested his unemployment, (*Id.* ¶ 43); the County refused to provide him with back pay upon his reinstatement despite having provided it for similarly-situated white employees, (*Id.* ¶ 49); and that the County has no affirmative action plan in place, (*Id.* ¶ 51). Moore also claims that, since his reinstatement, the County has continued to discriminate against him and subject him to a hostile work environment.

The County does not dispute that Moore was terminated for insubordination for refusing to answer questions posed during his disciplinary hearing, nor his being placed on probation and extending that probation once he was reinstated. The County explains that the probation periods were either mandatory for all employees placed in new positions, or they were necessary due to Moore struggling to adequately perform his work functions. The County submits that Moore's claims for racial discrimination should be dismissed because he cannot show that he was treated

---

[5] Bridgeport, in its Reply, raised a new defense to Moore's claims, claiming that some or all the claims are time-barred by the applicable statute of limitations. Bridgeport then filed a motion requesting that the Court grant Plaintiff leave to file a supplemental response to this newly-raised basis for dismissal. (Dkt. 71.) The Court, in its February 29, 2012, Order, granted Plaintiff leave to respond to the statute of limitations defense raised in Bridgeport's Reply, and Plaintiff responded in a supplemental opposition. (Dkt. 79.)

any differently than similarly-situated white employees; he has not engaged in the statistical analysis necessary to support a disparate impact claim; and the incidents which he claims support his hostile work environment claim were not based on race and were neither severe nor pervasive.

### 1. Unlawful Race Discrimination

Moore brings claims under federal anti-discrimination laws and Ohio Rev. Code ch. 4112. As this Court has done in previous cases, these claims will be analyzed together under Title VII's standard for establishing employment discrimination, for it is well-established under Ohio law that "'federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.'" *Peacock v. Altercare of Canal Winchester Post-Acute Rehab. Ct'r*, No. 2:10-CV-00719, 2011 U.S. Dist. LEXIS 124216, at *7 (S. D. Ohio Oct. 26, 2011) (citing *Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 630 N.E.2d 669, 672 (Ohio 1994); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)).

### a. Statute of limitations

The County asserts that, as a threshold matter, Moore's Section 1983 claims of discrimination stemming from actions taken against him more than two years prior to the filing of his lawsuit are precluded by the applicable statute of limitations. This would include his being placed on administrative leave in November 2006, his pre-disciplinary hearing held in December 2006, his termination on January 10, 2007. Moore denies that the statutory period has run on any of his claims, asserting that the County's discriminatory practices constitute a "continuing violation" from November 2006 to the present. Before turning to whether Moore has established

a prima facie case of discrimination, therefore, the Court addresses first whether some or all of Moore's claims are time-barred.

Moore filed his original complaint in this case on May 5, 2010. It is now well-established that "[t]he applicable statute of limitations for 42 U.S.C. § 1983 claims arising in Ohio requires that claims be filed within two years of their accrual." *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x 456, 461 (6th Cir. 2010); *see also Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). Thus, any discriminatory acts Moore alleges occurring prior to May 5, 2008 are precluded unless an exception applies. Moore does not dispute the appropriateness of a two-year statute of limitations to this case generally. Rather, Moore argues that the continuing violation doctrine applies in this case, which would prevent the statute of limitations period from tolling on the otherwise time-barred instances of continuing discrimination. In its reply brief, the County denies the applicability of the continuing violation exception.

Moore offers little to support the argument for continuing violation exception beyond paraphrasing authorities of questionable currency. He appears to propose that he has been subjected to a continuing violation in two ways: first, the County continued to enforce its allegedly offending practices within the two-year limitations period; and second, he has actually been harmed by a policy of discrimination followed by Defendants, and so long as that policy is enforced the statutory clock does not begin to run. These arguments track the two standard categories of continuing violations. *See, e.g.*, *Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001) ("The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of continuing violation . . . [t]he second category of continuing violation arises where there has occurred a long-standing and demonstrable policy of discrimination.").

Tellingly, Moore does not support his argument for a continuing violation with any cases from the past ten years. This is likely because in 2002 the Supreme Court held, in *National Railroad Passenger Corp. v. Morgan*, that "[d]iscrete discriminatory acts are not actionable if time barred, *even when they are related to acts alleged in timely filed charges*." 122 S. Ct. 2061, 2072 (2002) (emphasis added). The Sixth Circuit subsequently eradicated the two-category understanding of continuing violations, interpreting *Morgan* to provide that "plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) (also finding "no principled basis upon which to restrict *Morgan* to Title VII claims," and therefore concluding that same reasoning "must be applied to the [plaintiff's] § 1983 claims" as well).

Moore, thus, argues erroneously for a continuing violation under the defunct, pre-*Morgan* standards. This Court has held that "the continuing-violations doctrine 'applies only to violations that are part of a longstanding and demonstrable policy of illegality,'" i.e. the second of the two traditional categories. *Abuobeid v. Hargus*, No. 2:08-cv-762, 2010 U.S. Dist. LEXIS 43093, at *14 (S.D. Ohio May 3, 2010) (quoting *Cherry v. City of Bowling Green, Ky.*, 347 F. App'x 214, 216-17 (6th Cir. 2009)). To establish this category of continuing violation, Moore "must demonstrate something more than the existence of discriminatory treatment in his case," *Sharpe*, 319 F.3d at 269 (citations omitted), and instead must put forth evidence showing "that some form of intentional discrimination against the class of which Moore was a member was the company's standing operating procedure." *Id.* (quoting *EEOC v. Penton Indus. Publishing Co.*, 851 F.2d 835, 838 (6th Cir. 1988)).

Moore does not allege that the County treats blacks, or persons of color, as a class, in a discriminatory fashion, much less provide the Court with evidence supporting such an assertion. As a result, Defendant argues, Moore cannot show a continuing violation because he has failed to present any evidence of discriminatory treatment by the County outside of his specific case. The Court is forced to agree. The continuing violation exception is therefore unavailable to Moore and cannot be relied on to remedy his tardiness in raising the complaint of allegedly discriminatory acts that occurred prior to the cutoff date of May 5, 2008. Moore is consequently barred by the statute of limitations from asserting claims of discrimination for actions taken by the County prior to that date, including his initial administrative leave and subsequent termination in January 2007.

### b. Specific Instances of Discrimination

Moore is not barred from pursuing his claims of discrimination for adverse employment actions which occurred after May 2008. Moore claims that the County decision-makers and supervisors continued to discriminate against him on account of his race after his October 19, 2009 reinstatement by, *inter alia*: (1) failing to reinstate him in the same position he had held prior to being terminated; (2) failing to provide him with back pay and benefits from the time he was on leave; (3) continuously monitoring his actions and communications; (4) wrongfully accusing him of fraudulent behavior; (5) repeatedly placing him on extended probationary terms without just cause; and (6) disciplining him through a verbal warning for wearing a t-shirt to work. In total, the County's motion for summary judgment addresses no fewer than sixteen discrete instances of alleged discrimination committed by various actors under the County's employ which Moore mentioned either in his deposition testimony or his signed affidavit.

Not all the acts of County discrimination alleged by Moore constitute tangible "adverse employment actions" sufficient to form the basis of a Title VII violation. The Sixth Circuit considers an "adverse employment action" to be "an action by the employer that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009) (quoting *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007) (holding that, in general, "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary"). Of the actions alleged by Moore and addressed by the County, only the following constitute actionable adverse employment actions: (1) the County's denial of his back pay; and (2) the County's reassigning him to a different position.[6]

Moore concedes that he has not provided direct evidence of racial discrimination with respect to either of these alleged adverse actions. In the absence of direct evidence, racial discrimination may still be proved by satisfying the familiar three-part test under the *McDonnell Douglas Corp. v. Green* burden-shifting scheme. *See* 411 U.S. 792 (1973). In the first part of the test, Moore has the burden of establishing a prima facie case of race discrimination by showing: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated

---

[6] Moore complains, at length, about the probation extensions County placed him on up to and until September of 2010, however, he provides no evidence of any "significant change in employment status" he experienced as a result of being placed on probation. *See Ellerth*, 524 U.S. at 761. Being placed on probation status, without more, is insufficient to constitute a tangible employment action. *See id.*; *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir. 1994) (a "bruised ego" is not enough); *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (6th Cir. 1996) (demotion without change in pay, benefits, duties, or prestige insufficient to constitute actionable adverse employment action).

differently than similarly-situated employees who were not members of the protected class. *Peacock*, 2011 U.S. Dist. LEXIS 124216, at *8 (citing *Wright v. Murray Guard*, Inc., 455 F.3d 702, 707 (6th Cir. 2006)).

Second, if Moore "submit[s] evidence from which a reasonable jury could conclude that a prima facie case of discrimination has been established," *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007), the burden shifts to the County "to articulate some legitimate, nondiscriminatory reason" for the adverse actions. *McDonnell Douglas*, 411 U.S. at 803. Finally, "[o]nce a non-discriminatory reason has been offered, the burden of production returns to Moore to show that the defendant's legitimate reasons are merely pretextual, and that []he was in fact subjected to the adverse action on the basis of [his race]." *Weatherby v. Fed. Express*, 454 F. App'x 480, 489 (6th Cir. Jan. 5, 2012).

At summary judgment, "a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Id.* at 490. Moore is an African American—a protected class—and thus satisfies the first prong of his prima facie case. Second, as discussed, *supra*, Moore was denied back pay upon reinstatement, and was reassigned to a significantly different position at the County, both of which could constitute adverse employment actions. With respect to the third prong, Moore is presumably qualified for all the positions he held at the County because he was hired for them, and the County does not dispute that he is qualified.

The disputed issues concerning whether Moore has shown a prima facie case of discrimination lie in fourth prong of the test, which requires Moore to provide evidence of disparate treatment of similarly-situated, non-protected employees. *See Peacock*, 2011 U.S. Dist. LEXIS 124216, at *9. The Court proceeds by examining whether Moore establishes the

fourth prong of his prima facie case by providing evidence of disparate treatment with respect to either of the alleged acts of employment discrimination.  If necessary, the Court will then address the County's asserted non-discriminatory reasons and, finally, whether a triable issue exists as to whether the given reasons are pretextual.

*i.  Denial of back pay*

Moore complains that the County's refusal to provide him with "back pay and benefits" for the time he was on administrative leave and its denial of his related grievance were discriminatory because white employees of the County have received back pay under similar circumstances.  The County first asserts that none of the individuals  Moore cites as similarly-situated were, in fact, similarly-situated to him.  Second, the County insists that  Moore waived his right to back pay and never attempted to proceed to binding arbitration on the issue.  The County then provides five additional legitimate, non-discriminatory reasons why  Moore was not entitled to the back pay he requested from  Pielech.  In order: (1)  Moore did not state a grievance under the applicable collective bargaining agreement ("CBA") because there was no provision requiring the County to pay him what he sought; (2) the grievance was improperly filed; (3) the grievance was untimely; (4) no arbitrator reinstated  Moore pursuant to a grievance, and therefore the county was under no obligation to repay him any back pay or adjustments as he requested; and (5) the grievance was entirely devoid of merit.

To meet the fourth element of his prima facie case, "the comparative employees offered by plaintiff must be similarly-situated in all relevant respects."  *Peacock*, 2011 U.S. Dist. LEXIS 124216 at *10 (citing *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).  The Court's analysis of this question is inherently contextual, but has been held to require that the plaintiff and the colleagues with whom he compares himself "must have dealt with the same supervisor,

have been subject to the same standards and have engaged in the same conduct." *Perry*, 209 F.3d at 601. In his deposition, Moore lists three other individuals whom he claims were awarded back pay after making similar grievances for it: Gene Beckett, Robert Moore, and Marcella Petersavage. (Moore Depo. 186:23-187:12.) The County disputes that these individuals were similarly-situated. The first two individuals, Beckett and Moore, were never employees in the County's Department of Job and Family Services, where Plaintiff Moore works. Moore does not deny this, nor does he provide any support for his claim that these two individuals were similarly-situated.

Ms. Petersavage was an employee in the same department at the County as Moore, and was also charged with a crime for which she, like Moore, was indicted. According to Moore's sworn affidavit, however, Petersavage was awarded back pay only *after* submitting her grievance, and prior to entering arbitration, unlike Moore. (Moore Aff. ¶ 65B.) Construing the facts in the light most favorable to Moore, Petersavage's example might satisfy the fourth prong of identifying a similarly-situated white employee treated differently than Moore. Nevertheless, Moore provides no evidence whatsoever that the County's five stated nondiscriminatory reasons for denying his back pay, which distinguish his case from Petersavage's, are pretextual. As a result, even if Moore has met his burden to show a prima facie case of discrimination, he has produced no evidence of pretext. Therefore no material issue of fact exists to be tried on the issue of discrimination regarding the back pay. *See Weatherby*, 545 F. App'x at 489.

### ii. *Reassignment to a different position in the County*

Upon reinstatement, Moore was hired back into the same Department in a similar Case Manager position, but to a different unit – the County's Public Assistance Unit. Moore does not dispute that the pay was effectively the same in both positions. He alleges that this decision was,

nevertheless, discriminatory.  The County claims that  Moore was not hired back into his previously-held position of Child Support Enforcement Case Manager because a more senior and more highly-qualified employee legitimately superseded him during the interim for that position. In any event, because the position was substantially similar to the previous position, and his pay and benefits were not materially diminished, this action does not constitute an adverse employment action by the County.  *See Kocsis*, 97 F.3d at 885 ("Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims."); *see also Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (holding, in a retaliation case, that "the employer's requirement was not an adverse action, noting particularly that the Moore received no pay or benefits reduction").

## 2.  Hostile Work Environment

Moore also brings a hostile work environment claim based on his discriminatory treatment allegations, as described in the foregoing analysis.  The County argues that this claim, too, must fail because Moore has no evidence to support the contention that any of the alleged incidents were based on his race.  Additionally, contends the County,  Moore provides no admissible instances of any express racial animus, whatsoever, directed at him by other employees at the County.

The Sixth Circuit has confirmed that "[t]he *McDonnell Douglas* burden-shifting approach also applies to hostile-work-environment claims."  *Clay v. UPS*, 501 F.3d 695, 706 (6th Cir. 2007).  The *Clay* court provided the standard for establishing a prima facie case of a hostile work environment based on racial harassment.  To prevail,  Moore must show:

> (1) []he is a member of a protected class; (2) []he was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [his] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability.

*Id.* (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)).

Courts have elaborated that "a hostile work environment exists when the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Taylor v. Donahoe*, 452 F. App'x 614, 620 (6th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The County placed Moore on probation when he returned, and extended it three times, despite his 92% test score on a mandatory training test—ostensibly administered to determine probation status, whereas a white employee's probation was extended only once despite her scoring no higher than 70% on such a test (*Id.* ¶ 56). Moreover, Moore avers that the County now monitors all of his actions and interactions, including during breaks, and that his colleagues have made unfounded accusations aimed at him (*Id.* ¶¶ 52-54). Moore claims that the discriminatory acts of the County were performed under the direction and approval of Pielech, acting in furtherance of his responsibilities regarding management of the Defendant County's employees.

Moore does not present an argument in opposition to the County's motion for summary judgment on his hostile work environment claim except a single conclusory sentence insisting to the Court that the facts he set forth "clearly support a finding of hostile work environment, known to defendants . . ." (Dkt. 60, at 15.) Elsewhere in his briefing and his deposition, Moore makes allegations of monitoring by his employer; accusations of fraud by coworkers; having a coworker insist that he was guilty of the robbery for which he was indicted and then having his office moved nearer to that coworker; and being disciplined for wearing an "African American graphic t-shirt." (Dkt. 60, at 7; Moore Depo. 192:18-194:9.)

Accepting Moore's account of these incidents as true, the alleged hostile actions by the County and hostile interactions with coworkers do not suffice to create a legally actionable hostile work environment. Fatally, Moore does not even allege that anyone harassed him based on his race. *See Weatherby*, 454 F. App'x at 492 (affirming summary judgment on a plaintiff's hostile environment claim "because she has failed to show that she was the victim of harassment at FedEx, based either on race, sex, age or retaliation"). While "[c]onduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, [plaintiff] would not have been the object of harassment," *Clay*, 501 F.3d at 706, the alleged harassment must be more severe and pervasive than what Moore complains of here. The Sixth Circuit has stated that:

> In order to establish a racially hostile work environment under Title VII, the plaintiff must show that the conduct in question was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim subjectively regarded it as abusive. The plaintiff must also prove that his employer 'tolerated or condoned the situation,' or knew or should have known of the alleged conduct and did nothing to correct the situation.

*Smith v. Leggett Wire Co.,* 220 F.3d 752, 760 (6th Cir. 2000). Moore having his probation status extended, being "monitored," having fellow employees accuse him of fraud, and being disciplined for wearing a t-shirt and breaking dress code standards do not, together, amount to a "hostile or abusive" environment, based on a reasonable person standard under *Smith*, supra.

Moore has not established a prima facie case for a racially hostile environment at the County. Moreover, even if he were to satisfy his burden for a prima facie case, Moore provides no evidence that the County's stated job-related reasons for placing him on extended probations, not performing his duties, violating the dress code, and job-related infractions resulting in verbal warnings, are pretextual. Moore's hostile work environment claim therefore fails to create a

triable issue of fact.  Summary judgment is appropriate on all of Moore's claims for employment discrimination against his employer, Belmont County.

## B.  Moore's Remaining Claims against AFSCME

The Court's Order of August 30, 2011 denied AFSCME's motion to dismiss with respect to Moore's Section 1981 claim of racial discrimination for AFSCME's failure to pursue his grievances of racial discrimination against the County.  The Court also denied AFSCME's motion to dismiss Moore's state law discrimination claim under Ohio Rev. Code ch. 4112.02, to the extent Moore was asserting such a claim against the union defendants.  (Dkt. 47.)  AFSCME now moves for summary judgment on those remaining claims.[7]

The Court agrees with AFSCME's position as stated both in the instant motion, and in its prior Motion for Reconsideration, (Dkt. 50)—which  Moore did not oppose—that  Moore does not appear to be asserting a distinct state law discrimination claim, because in his opposition he argues under Title VII's race discrimination analysis.  Furthermore, the case law provides that if Moore maintains a state law discrimination claim against AFSCME for the failure to bring his grievances, it is analyzed under the same legal standard as his Section 1981 claim.  *See Thompson v. UHHS Richmond Heights Hosp.*, Inc., 372 F. App'x 620, 623 (6th Cir. 2010) (combining the analysis of a plaintiff's Section 1981 claim and his O.R.C. 4112.02 claim); *Plumbers & Steamfitters*, 421 N.E.2d at 131.

As this Court stated in its prior order, "Section 1981 prohibits racial discrimination in making and enforcing of contracts, court proceedings, and the protections and obligations of law,"  (Dkt. 47), however "[t]he 'right ... to ... enforce contracts' embraces only protection of a

---

[7] The Court notes that AFSCME maintains that Defendants Ohio Council 8 and Local 3073 are each separate and legally distinct entities.  As the Court grants summary judgment in their favor on all claims, however, treating Moore's claims against the two in a combined fashion, as they have and  Moore has in their briefing, will not prejudice the parties in any way.

judicial or non-judicial legal process, and of a right of access to that process, that will address and resolve contract-law claims without regard to race." *Id.* (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 165 (1989)). The Court therefore determined that Moore had successfully pleaded a claim under Section 1981 for "AFSCME's failure to process an employee's grievances of racial discrimination by an employer, and that AFSCME failed to process those grievances for a racially discriminatory purpose." (Dkt. 47.)

As stated in *Robinson v. Laborers' Intern Union of North America AFL-CIO*:

[A] union violates § 1981 if it discriminates in the enforcement of a collective bargaining agreement by refusing "to process grievances, press claims, and represent members[s] in disputes over the terms of binding obligations that run from the employer to the employee...."

1989 WL 162783, at *2 (N.D. Ohio 1989) (quoting *Patterson v. McLean Credit Union*, 109 S. Ct. 2363, 2373 (1989)).

Moore alleges that AFSCME failed to pursue or process his grievances despite the fact it pursued and processed the grievances of white employees. Moore further claims that AFSCME acquiesced to Moore's extended probationary period without his approval. It is undisputed that Moore submitted two grievances to AFSCME: (1) one with regard to his suspension and termination, which he filed in January 2007, and (2) one for the County's denial of his back pay and benefits, which he filed in November 2009. (Dkt. 61, at 4; Dkt. 68, at 4.) Moore also provides evidence in the form of a letter suggesting that he complained of hostile work environment to AFSCME in early 2010, (Dkt. 49-1, p. 56), though no evidence of a formal grievance is provided with respect to that particular complaint. Broadly interpreting this Court's prior order and the case law, the Court treats these grievances as actionable under Section 1981.[8]

---

[8] Moore's grievances may not be actionable under Section 1981, however, as it is not clear that they were filed "based upon his belief that that he was being discriminated against because of race," *Alsup v. International Union of Bricklayers and Allied Craftsmen*, 902 F.2d 1568, at *5 (6th Cir. 1990). Not all discriminatory acts by a labor union

24

Moore's January 2007 grievance for reinstatement and back pay was denied by Defendant Pielech in February 2007, (Dkt. 49-1, p. 25). Similarly, his November 17, 2009 grievance for back pay and other benefits was denied on November 23, 2009 by Defendant Pielech. Moore alleges that AFSCME refused to take further action on his behalf, and that AFSCME signed a memorandum of understanding waiving his back pay against his will, and refused to proceed to arbitration on his behalf contrary to his wishes. (Moore Aff. ¶¶ 44-46.) AFSCME disputes the veracity of many of Moore's claims, but for the purposes of summary judgment the Court accepts all Moore's alleged facts as true.

Moore does not provide any direct evidence of racial discrimination in AFSCME's decision not to proceed any further with his grievances, and so the Court must employ the three-part burden shifting test for drawing an inference of disparate treatment under Title VII. *See Alexander v. Local 496, Laborers Intern. Union of North America*, 778 F. Supp. 1401, 1419 (N.D. Ohio 1991) ("Intentional discrimination through disparate treatment violates both Title VII and 42 U.S.C. § 1981."); *Amini,* 440 F.3d at 358 ("When a claimant seeks to prove intentional discrimination inferentially in a section 1981 case, federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green*.").

Moore claims that AFSCME refused to pursue his grievances despite the fact that grievances of white employees are processed and pursued. He does not support this claim,

---

which might be actionable under Title VII are also actionable under Section 1981, rather only that class of actions which "abridge[] a right enumerated in section 1981(a)." *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006). It is with this understanding that the Supreme Court, in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987), held that the actionable violation, under Section 1981, committed by the defendant unions was the unions' "policy of refusing to file grievable racial discrimination claims," not merely failing to pursue employee's grievants who happen to be included in a protected class, as in Moore's case. As Moore is the non-moving party, however, the Court, drawing "all reasonable inferences in favor of" him, *Jones*, 488 F.3d at 402-03, presumes for the sake of this motion that these grievances were filed based at least in part on a complaint of racial discrimination, and are therefore actionable under Section 1981.

however, beyond making bare references to portions of his own affidavit. The lone white individual Moore identifies as having actually filed a grievance, and who therefore could be considered similarly-situated for purposes of satisfying a prima facie case of discrimination, is again Ms. Petersavage. (Moore Aff. ¶ 66B.) *See Peacock*, 2011 U.S. Dist. LEXIS 124216 at *11 (to be considered similarly-situated, "the employees must 'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it'") (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Moore concedes that in the case of Petersavage, who filed a grievance after being terminated following her own indictment, AFSCME also did not take her grievance to arbitration. She settled and received some back pay. (Moore Aff. ¶ 66B.) AFSCME maintains that it did not treat Petersavage was not treated any more favorably than Moore, as she only received a portion of back pay, lost certain benefits and rights under her contract, and was demoted to a lower paying position. Nevertheless, the Court must make all reasonable inferences in favor of Moore, and therefore it must accept that AFSCME's securing Petersavage back pay through settlement constitutes disparate treatment. Hence, Moore has met the requirements for showing a prima facie case of discrimination by AFSCME.

The burden therefore shifts to AFSCME to provide a legitimate, non-discriminatory reason for the disparate treatment of Petersavage. *See McDonnell Douglas*, 411 U.S. at 803. Then, "the burden of production returns to the plaintiff to show that the defendant's legitimate reasons are merely pretextual, and that []he was in fact subjected to the adverse action on the basis of [his race]." *Weatherby*, 454 F. App'x at 489. In support of its position that Moore has not been discriminated against, AFSCME points to the sworn affidavit of Harold Mitchell, who

reviewed Moore's grievances. (Dkt. 55-3.) Mitchell claims that AFSCME does not keep records of race, and he did not know Moore's race when reviewing his grievance for possible arbitration. (*Id.* ¶ 3.) He claims that in good faith, he determined that Moore's "grievances lacked merit" because he had been terminated for insubordination by defying a direct order to answer questions at the predisciplinary hearing, which constituted just cause for termination without the right to back pay. (*Id.* ¶ 4.) Mitchell's explanation suffices as evidence of a non-discriminatory reason that AFSCME did not pursue Moore's grievances for back pay and benefits at arbitration.

Moore has not, as his burden requires, disclosed any evidence which shows that AFSCME's asserted, non-discriminatory justifications for its actions are pretextual. Even when benefitting from every favorable inference, the evidence provided by Moore fails to raise a triable issue that AFSCME's justifications are pretextual. Thus, his claim cannot survive summary judgment. Although "it is sufficient to demonstrate that, regardless of the validity of the defendant's assertions, race was one cause," *see Alexander*, 778 F. Supp. at *50, the Sixth Circuit has emphasized that "a black candidate is not entitled to a trial merely because the employer's reasons for selecting a white candidate *might* be a pretext." *Wrenn v. Wernert*, 765 F.2d 147, at *10 (6th Cir. 1985) (emphasis added) (quoting *Mason v. Continental Illinois National Bank*, 704 F.2d 361 (7th Cir. 1983)). There must be some affirmative evidence of pretext presented by the plaintiff.

Through his voluminous submissions in opposition to Defendants' motions, Moore has demonstrated his deep dissatisfaction with how the Defendants handled his various complaints. Evidence which merely suggests possible substandard treatment by one's union representatives,

however, is not sufficient to sustain a claim under Section 1981 for racially-motivated failure to

prosecute grievances.  Moore's misunderstanding of the law is highlighted by his contention that:

> [D]iscriminatory intent may be inferred from the foregoing facts, and in particular
> from the facts that movants waived Mr. Moore's rights without his written
> consent, did not grieve or otherwise object to extensions of his probation . . . and
> acted as though they were working on his behalf while between themselves were
> simply pretending to go through the motions and actually believed he was guilty
> of the robbery.

(Dkt. 61, p.8.)

 Moore is incorrect in this characterization of when discriminatory intent may be inferred.

To create a triable inference of discriminatory intent, Moore was required to first show that he

was treated in an inferior fashion to similarly-situated white employees, and then to rebut as

pretextual the justifications given by AFSCME.  *See, e.g.*, *Alsup v. International Union of

Bricklayers and Allied Craftsmen*, 902 F.2d 1568, at *5 (6th Cir 1990) (upholding summary

judgment where, "[a]side from his subjective belief that these incidents were racially motivated,

the [plaintiff] has failed to produce any evidence of racial animus or discriminatory purpose, a

necessary element of a section 1981 claim").  Moore has not made the requisite showing, and

therefore AFSCME's motion for summary judgment must be granted.

AFSCME objects, in its Motion to Strike Moore's Affidavit (Dkt. 69), to portions of

Moore's signed affidavit (Dkt. 59-1), under Rule 54(c), which requires that "[a]n affidavit or

declaration used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated."  Fed. R. Civ. P. § 54(c)(4).  While AFSCME's Motion to Strike is

well-taken, given the Court's ruling granting summary judgment in AFSCME's favor,

notwithstanding any deficiencies in  Moore's affidavit, it is unnecessary for the Court to take up

the substance of this motion to strike. The admissibility of the portions of Moore's affidavit in question is now moot.

## V. CONCLUSION

For the foregoing reasons, Defendant Bridgeport's Motion for Summary Judgment is **GRANTED** in its entirety. Moore's remaining claims against Bridgeport are, accordingly, **DISMISSED**.

Defendants Belmont County and Dwayne Pielech's Motion for Summary Judgment is **GRANTED**, in its entirety. The Court **DISMISSES** all of Moore's claims against the County.

Defendant AFSCME's Motion for Summary Judgment is hereby **GRANTED** in its entirety, and Moore's remaining claims against AFSCME are **DISMISSED**. AFSCME's Motion for Reconsideration of the Court's Opinion and Order Filed August 30, 2011 (Dkt. 50), is **MOOT** and, therefore, is **DENIED**. AFSCME's Motion to Strike Moore's Affidavit and Memorandum in Support (Dkt. 69), is also now **MOOT**, and is **DENIED**.

**IT IS SO ORDERED.**

        **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: September 27, 2012**